Case 6:22-cv-00964-SB    Document 22    Filed 01/03/24    Page 1 of 16
Case 6:22-cv-00964-SB    Document 22    Filed 01/03/24    Page 1 of 16

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ROBERT H.,[1]

Plaintiff,

v.

KILOLO KIJAKAZI, Acting Commissioner of Social Security,[2]

Defendant.

Case No. 6:22-cv-00964-SB

**OPINION AND ORDER**

**BECKERMAN, U.S. Magistrate Judge.**

Robert H. ("Plaintiff") brings this appeal challenging the Commissioner of Social Security's ("Commissioner") denial of his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The Court has jurisdiction pursuant to 42 U.S.C. § 405, and the parties have consented to the jurisdiction of a magistrate judge pursuant to

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party.

[2] Kilolo Kijakazi became the acting Commissioner of the Social Security Administration on or about July 9, 2021, and is named as the defendant in place of "Commissioner Social Security Administration." *See* FED. R. CIV. P. 25(d).

PAGE 1 – OPINION AND ORDER

28 U.S.C. § 636(c). For the reasons explained below, the Court affirms the Commissioner's decision because it is free from harmful legal error and supported by substantial evidence.

## STANDARD OF REVIEW

The district court may set aside a denial of benefits only if the Commissioner's findings are "not supported by substantial evidence or based on legal error." *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022) (quoting *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009)). Substantial evidence is defined as "more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Bray*, 554 F.3d at 1222 (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court may not affirm the Commissioner's decision "simply by isolating a specific quantum of supporting evidence." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014)). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id.* (citing *Garrison*, 759 F.3d at 1009). Where the record as a whole can support either the grant or denial of Social Security benefits, the district court "may not substitute [its] judgment for the [Commissioner's]." *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

## BACKGROUND

### I. PLAINTIFF'S APPLICATION

Plaintiff was born on March 22, 1957, making him nearly sixty years old on March 21, 2017, his alleged disability onset date.[3] (Tr. 16, 60, 173, 189.) Plaintiff has a high school

---

[3] To be eligible for DIB, "a worker must have earned a sufficient number of [quarters of coverage] within a rolling forty quarter period." *Herbert v. Astrue*, No. 1:07-cv-

PAGE 2 – OPINION AND ORDER

diploma and past work experience as a painter. (*Id.* at 23, 183.) In his application, Plaintiff alleged disability due to hepatitis C, leg and ankle injuries, and vision difficulties. (*Id.* at 182.)

The Commissioner denied Plaintiff's application initially and upon reconsideration. (*Id.* at 85, 91.) On September 23, 2020, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 94.) Plaintiff and an impartial vocational expert ("VE") appeared and testified at a hearing before an ALJ on May 19, 2021. (*Id.* at 28-59.)

On June 29, 2021, the ALJ issued a written decision denying Plaintiff's application. (*Id.* at 16-23.) On April 28, 2022, the Appeals Council denied Plaintiff's request for review, making the ALJ's written decision the final decision of the Commissioner. (*Id.* at 1-6.) Plaintiff now seeks judicial review of that decision.

## II.   THE SEQUENTIAL PROCESS

A claimant is considered disabled if the claimant is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than [twelve] months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011) (citation

---

01016, 2008 WL 4490024, at *4 n.3 (E.D. Cal. Sept. 30, 2008) (citation omitted). Workers accumulate quarters of coverage based on their earnings. *Id.* Typically, "the claimant must have a minimum of twenty quarters of coverage [during the rolling forty-quarter period to maintain insured status]. . . . The termination of a claimant's insured status is frequently referred to as the 'date last insured' or 'DLI.'" *Id.* (citation omitted). Thus, Plaintiff's date last insured ("DLI") of March 31, 2017 (Tr. 16) reflects the date on which his insured status terminated based on the previous accumulation of quarters of coverage. If Plaintiff established that he was disabled on or before March 31, 2017, he is entitled to DIB. *See Truelsen v. Comm'r Soc. Sec.*, No. 2:15-cv-02386, 2016 WL 4494471, at *1 n.4 (E.D. Cal. Aug. 26, 2016) ("To be entitled to DIB, plaintiff must establish that he was disabled . . . on or before his date last insured." (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999))).

PAGE 3 – OPINION AND ORDER

omitted). Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 724-25.

The claimant bears the burden of proof for the first four steps. *See Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020) (citation omitted). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. *See id.* at 1148-49. The Commissioner bears the burden of proof at step five, where the Commissioner must demonstrate that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999)). If the Commissioner fails to meet this burden, the claimant is disabled. *See Garrison*, 759 F.3d at 1011.

### III. THE ALJ'S DECISION

The ALJ applied the sequential evaluation process to determine if Plaintiff was disabled. (Tr. 17-23.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 21, 2017,[4] the alleged onset date. (*Id.* at 18.) At step two, the ALJ determined that Plaintiff suffered from the following severe impairment: meniscus tear with degenerative joint disease of the knee. (*Id.*) At step three, the ALJ concluded that Plaintiff did not have an impairment that meets or medically equals a listed impairment. (*Id.* at 20.) The ALJ

---

[4] As Plaintiff points out, the ALJ's opinion reflects an incorrect alleged onset date of March 1, 2018. Plaintiff's original application listed March 1, 2018, as the alleged onset date, but his attorney amended the date to March 21, 2017, as the ALJ acknowledged elsewhere in his opinion. (*See* Tr. 16, 173.)

PAGE 4 – OPINION AND ORDER

then found that Plaintiff had the residual functional capacity ("RFC") to perform medium work, subject to the limitations that he can occasionally climb ladders, ropes, and scaffolds and occasionally kneel and crawl. (*Id.* at 21.) At step four, the ALJ found that Plaintiff could perform his past work as a painter. (*Id.* at 23.) Accordingly, the ALJ did not reach step five.

## DISCUSSION

Plaintiff argues that the ALJ erred by failing to provide specific, clear, and convincing reasons supported by substantial evidence for discounting his human immunodeficiency virus ("HIV") symptom testimony and by concluding that his HIV was not a severe impairment at step two of the sequential process. (Pl.'s Opening Br. ("Pl.'s Br.") at 5.) As explained below, the Court concludes that the Commissioner's decision is free of harmful legal error and supported by substantial evidence, and thus affirms the Commissioner's decision.

I.        **PLAINTIFF'S SYMPTOM TESTIMONY**

     A.        **Applicable Law**

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited[.]" *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Garrison*, 759 F.3d at 1014 (simplified). Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives specific, clear and convincing reasons for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (simplified).

///

///

**B.     Analysis**

There is no evidence of malingering here, and the ALJ determined that Plaintiff provided objective medical evidence of underlying impairments that might reasonably produce the symptoms alleged. (Tr. 21.) The ALJ was therefore required to specify which testimony the ALJ found not credible and provide clear and convincing reasons for discounting Plaintiff's symptom testimony. *See Ghanim*, 763 F.3d at 1163.

**1.     Plaintiff's Symptom Testimony**

Plaintiff applied for disability benefits based on his hepatitis C, leg and ankle injuries, and vision difficulties. (Tr. 182.) Plaintiff's medical records also reveal an HIV diagnosis, right shoulder pain, anxiety, and depression. (*See, e.g.*, *id.* at 19, 67, 329, 1026, 1030-31.)

At the hearing, Plaintiff testified that he no longer works because his knee has caused him repeated falls. (*Id.* at 39-40.) He testified to fifty falls in the span of two and a half years. (*Id.* at 57.) For example, he explained that he had recently fallen four or five times within a two-week span, always because of his right lower extremity. (*Id.* at 40.) His knee is unable to hold his weight, and it pops out of its socket making a loud sound. (*Id.*) Multiple falls knocked him unconscious. (*Id.* at 52, 57.) Plaintiff stated that he had to improve his balance and, in order to work, "I just have to stop falling." (*Id.* at 57.)

Plaintiff testified that, when last employed, he had difficulty working because of his knee, left foot, ankles, and plantar fasciitis. (*Id.* at 41-42.) Plaintiff testified that he could only be on his feet for four to six hours at a time and that his knee and ankles hindered his ability to lift a ladder or buckets of paint. (*Id.* at 42-44.)

Plaintiff also testified that he received treatment for HIV. (*Id.* at 44.) When asked if the HIV affected his ability to perform work activities, he responded, "Yeah, I had a level of fatigue

sometimes. . . . [I]f you don't pace yourself perfectly, . . . you'll end up with a fatigue that's hard to break." (*Id.*) He added that the fatigue was a side effect from his HIV medication. (*Id.*)

Plaintiff further testified that his anxiety and depression worsened after his father passed away, arising out of the blue, overwhelming him, and disrupting his ability to talk. (*Id.* at 45, 47.) Plaintiff also discussed receiving treatment for hepatitis C. (*Id.* at 47-48.)

### 2.    The ALJ's Findings

The ALJ stated that he "considered all symptoms" and concluded that the intensity, persistence, and limiting effects of Plaintiff's symptoms are not entirely consistent with the medical evidence and other evidence in the record. (*Id.* at 21.) The ALJ acknowledged Plaintiff's application based on hepatitis C, leg and ankle injuries, and vision difficulties, and summarized that at the hearing Plaintiff "reasserted his allegations of pain with falling because of his knee problems" and his increase in depression and anxiety. (*Id.*) The ALJ reviewed Plaintiff's medical records documenting the meniscal tear in his knee and his treatment. (*Id.* at 22.) The ALJ concluded that the records did not support Plaintiff's testimony regarding the severity of his symptoms, but the ALJ indicated that he accounted for Plaintiff's knee impairment in the RFC by restricting Plaintiff to perform a reduced range of medium exertional work activities with some associated limitations in postural activities. (*Id.*)

The ALJ then explained that Plaintiff's treatment for degenerative joint disease had been very conservative. (*Id.*) Further, the ALJ reasoned that Plaintiff's alleged limitations were not fully supported by his reported activities such as going back to work or digging, which "indicate a higher level of function than that alleged by the claimant." (*Id.*)

### 3.    Fatigue Testimony

It is well settled than an ALJ must "specifically identify the testimony from a claimant [the ALJ] finds not to be credible and . . . explain what evidence undermines that testimony."

PAGE 7 – OPINION AND ORDER

*Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (simplified); *see also Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015) (noting that the ALJ must "specify which testimony [the ALJ] finds not credible"). This specificity requirement is not satisfied where the ALJ did not connect the findings or record evidence to particular symptom testimony. *See Brown-Hunter*, 806 F.3d at 494 ("Because the ALJ failed to identify the testimony she found not credible, she did not link that testimony to the particular parts of the record supporting her non-credibility determination. This was legal error.").

That said, the ALJ need not "perform a line-by-line exegesis of the claimant's testimony," or "draft dissertations when denying benefits." *Lambert*, 980 F.3d at 1277 (9th Cir. 2020) (citing *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) ("[T]he ALJ's analysis need not be extensive.")). Further, the ALJ need not address all of the evidence but only must explain "why significant probative evidence has been rejected." *Kilpatrick v. Kijakazi*, 35 F.4th 1187, 1193 (9th Cir. 2022) (quoting *Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (per curiam)).

In *Young v. Saul*, the Ninth Circuit recently "reject[ed the claimant's] argument that, by failing expressly to mention [the claimant's] assertion that his back pain created a need for him to take weeks off from work at a time, the ALJ thereby overlooked that testimony and failed to give reasons to discount it." 845 F. App'x 518, 519 (9th Cir. 2021). The Ninth Circuit reasoned, "[t]he ALJ specifically cited [the claimant's] written statements and testimony as among the items he had 'carefully consider[ed],' and he gave specific reasons why he did not credit [the claimant's] claims concerning the 'limiting effects' of [the claimant's] symptoms, including his 'back and knee pain.'" *Id.* at 519-20. Accordingly, "[t]he ALJ was not required to mention

PAGE 8 – OPINION AND ORDER

explicitly, in his ruling, each detail of [the claimant's] testimony, such as the need to take off weeks at a time from work." *Id.* at 520 (citing *Lambert*, 980 F.3d at 1277).

Similarly, the Ninth Circuit recently affirmed the Commissioner's denial of benefits in *Cooper v. Kijakazi*, explaining:

> [T]he ALJ summarized [the claimant's] relevant testimony concerning her key asserted limitations and stated that he found "these statements of extremely limited physical capacity inconsistent with the overall record." The ALJ then explained the specific reasons upon which that conclusion was based. Although [the claimant] would have preferred a more granular point-by-point refutation of her testimony, "[o]ur cases do not require ALJs to perform a line-by-line exegesis of the claimant's testimony, nor do they require ALJs to draft dissertations when denying benefits."

*Cooper v. Kijakazi*, No. 20-15935, 2022 WL 1553170, at *1 (9th Cir. May 17, 2022) (quoting *Lambert*, 980 F.3d at 1277).

Here, Plaintiff argues that the ALJ erred by failing to provide specific, clear, and convincing reasons supported by substantial evidence for discounting his HIV symptom testimony regarding fatigue. (Pl.'s Br. at 6.) Importantly, Plaintiff does not argue that the ALJ failed adequately to discount his testimony about his lower extremities or any other symptom testimony.

The Court concludes that Plaintiff has not demonstrated that his HIV symptom testimony had significant probative value such that the ALJ was required to address it more directly. The ALJ "considered all symptoms" and then summarized Plaintiff's testimony about his *key* limitations. (Tr. 21); *see Cooper*, 2022 WL 1553170, at *1 (affirming denial of benefits where the ALJ addressed only the claimant's "relevant testimony concerning her key asserted limitations"). Plaintiff's hearing testimony about his only HIV-related symptom—fatigue—was vague and limited in scope. (*See* Tr. 44, testifying that he experienced "a level" of fatigue "sometimes"). The Court finds that the ALJ did err by not directly addressing Plaintiff's

PAGE 9 – OPINION AND ORDER

reference to fatigue during the hearing, especially where Plaintiff did not assert HIV as a disability nor fatigue as an impairment in his application (*see id.* at 182) and focused his hearing presentation on his lower extremity impairments. *See Barreras v. Saul*, 803 F. App'x 70, 73 (9th Cir. 2020) (explaining that a "single comment . . . was neither significant nor probative"); *Michelle D. v. Comm'r of Soc. Sec.*, No. 2:20-cv-00878-TLF, 2021 WL 3783161, at *3 (W.D. Wash. Aug. 26, 2021) (concluding that a vague medical opinion recommendation was not significant, probative evidence); *cf. Navarro v. Berryhill*, No. ED 18-cv-00197-MAA, 2018 WL 4204502, at *3 (C.D. Cal. Sept. 4, 2018) ("[S]ince Plaintiff's allegation of fatigue was a critical aspect of her claim of disability (because it was raised as a primary ground for disability and because she asserted it with specificity and detail in her written questionnaire), the failure to address the allegation was reversible legal error." (citing *Swenson v. Sullivan*, 876 F.2d 683, 687-88 (9th Cir. 1989))).

For these reasons, the ALJ did not err in evaluating Plaintiff's hearing testimony regarding fatigue.[5] *See Kilpatrick*, 35 F.4th at 1193 (explaining that the ALJ is only required to "explain why significant probative evidence has been rejected"); *Dylan W. v. Comm'r of Soc. Sec.*, No. 18-cv-5542, 2019 WL 2124230, at *4 (W.D. Wash. May 15, 2019) ("Plaintiff does not show that these findings constitute significant, probative evidence, such that the ALJ was required to explain why he rejected them."), *aff'd sub nom. Whitehead v. Saul*, 830 F. App'x 173 (9th Cir. 2020).

    4.    **Agency Personnel Statement**

Plaintiff also argues that, in violation of SSR 16-3p, the ALJ failed to consider a statement in the record by a Social Security Administration ("SSA") employee who interviewed

---

[5] Plaintiff only challenges the ALJ's evaluation of his symptom testimony with respect to his reported fatigue. (*See* Pl.'s Br. at 5-13.)

Plaintiff. (Pl.'s Br. at 13.) Specifically, when considering Plaintiff's symptom testimony, the ALJ did not note the employee's observation that Plaintiff "appeared very drowsy and sleepy." (*Id.*, citing Tr. 190.)

SSR 16-3p states that the ALJ "will consider any statements in the record noted by agency personnel who previously interviewed the [claimant]." SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). However, "[t]he ALJ's general obligation under SSR 16-3p to consider statements of agency personnel who interviewed the claimant does not impose a duty to discuss every such statement on the records no matter the probative value." *Ferdows v. Berryhill*, No. 8:17-cv-01116-SK, 2018 WL 7501295, at *2 (C.D. Cal. Oct. 10, 2018) (citing *Vincent*, 739 F.2d at 1394-95).

For the same reasons discussed above, Plaintiff has not demonstrated that the SSA employee's observation that Plaintiff appeared drowsy and sleepy was sufficiently probative to require a separate discussion in the ALJ's opinion, especially where Plaintiff focused his application and presentation on his lower extremity impairments. *See Kilpatrick*, 35 F.4th at 1193 (noting that the ALJ must explain only "why significant probative evidence has been rejected" (quoting *Vincent*, 739 F.2d at 1394-95)); *see also Venezia v. Berryhill*, 765 F. App'x 319, 320 (9th Cir. 2019) ("We reject [the plaintiff's] contentions that the ALJ erred by ignoring statements of Social Security Administration official field worker . . . because [the plaintiff] has not shown that the statements were significant or probative." (citing *Vincent*, 739 F.2d at 1395)); *Kathleen S. v. Saul*, No. 3:19-cv-00651-JLS-RNB, 2020 WL 353602, at *11 (S.D. Cal. Jan. 21, 2020) (concluding that the SSA personnel statement was not probative and "that reversal is not warranted based on the alleged violation of SSR 16-3p"), *report and recommendation adopted*,

PAGE 11 – OPINION AND ORDER

2020 WL 2848150 (S.D. Cal. June 2, 2020). Accordingly, the ALJ did not err by not addressing the SSA employee's observation of Plaintiff.

## II.     THE ALJ'S STEP-TWO SEVERITY FINDING

### A.     Applicable Law

At step two, "[a]n impairment or combination of impairments may be found 'not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on [the claimant's] ability to work.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)). The Ninth Circuit has recognized that step two is "a de minimis screening device used to dispose of groundless claims[.]" *Id.* at 687 (simplified).

A claimant bears the burden of demonstrating that an ALJ's step-two error was harmful. *See Howland v. Saul*, 804 F. App'x 467, 469 (9th Cir. 2020) (explaining that the claimant bears "the burden of demonstrating harmful error" and that the "burden of showing that an error is harmful normally falls upon the party attacking the agency's determination" (quoting *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded by regulation on other grounds as recognized in Davis v. Kijakazi*, No. 21-3541, 2022 WL 2072656, at *1 (9th Cir. June 9, 2022))). If the ALJ resolved step two in the claimant's favor, a claimant must do two things to demonstrate harmful error.

First, a claimant must demonstrate that substantial evidence does not support the ALJ's RFC and the VE hypothetical derived therefrom. *See Havens v. Kijakazi*, No. 21-35022, 2022 WL 2115109, at *1 (9th Cir. June 13, 2022) ("[E]ven if the [step-two] determination was in error, it was harmless because the ALJ considered these conditions among [the] claimed impairments in the overall [RFC] determination."); *Fowler v. Kijakazi*, No. 20-36016, 2021 WL 5823704, at *1 (9th Cir. Dec. 8, 2021) ("[A]ny error was harmless because the ALJ still resolved

PAGE 12 – OPINION AND ORDER

step two in [the claimant's] favor and considered all medically determinable impairments (severe and non-severe) at the later steps.") (citation omitted); *see also Venezia*, 765 F. App'x at 320 (holding that the ALJ erred in finding no severe impairment because substantial evidence did not support such a finding, and remanding "for the ALJ to continue the sequential analysis beyond step two").

A claimant can do so by demonstrating that the ALJ erred in discounting, among other things, the claimant's symptom testimony or medical opinion evidence. *See Berg v. Saul*, 831 F. App'x 849, 850 (9th Cir. 2020) (explaining that the ALJ erred in discounting medical opinion evidence that addressed the claimant's mental impairments and that the "errors were not harmless" because although "the ALJ permitted [the claimant's] claim to proceed past step two . . . , the errors resulted in a[n RFC] that excluded the significant [and improperly discounted] limitations caused by [the claimant's] depression and other mental impairments"); *Urban v. Saul*, 808 F. App'x 453, 455 (9th Cir. 2020) ("[T]he [step two] error was not harmless here, because in determining [the claimant's] RFC, which identified no limitations stemming from [the claimant's] mental impairment, the ALJ improperly discounted the opinions of three medical providers . . . who concluded that [the claimant's] severe depression and anxiety impacted his ability to work."); *see also Venezia*, 765 F. App'x at 320 (holding that the ALJ committed harmful error in finding no severe impairment at step two because the ALJ erred in discounting the claimant's testimony and lay witness testimony).

Second, and importantly, a claimant asserting that an ALJ's step-two findings resulted in harmful error must identify and detail what limitations the ALJ should have included in the RFC determination. *See Delgadillo v. Kijakazi*, No. 20-56211, 2022 WL 301548, at *3 (9th Cir. Feb. 1, 2022) (rejecting the claimant's argument that the ALJ "failed to consider the impact of

PAGE 13 – OPINION AND ORDER

[certain] functional impairments" because the claimant's "brief . . . fail[ed] to 'detail what other physical limitations' should have been included in the RFC based on these considerations, which overlap with points the ALJ expressly considered" (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 n.2 (9th Cir. 2009))); *Youngblood v. Berryhill*, 734 F. App'x 496, 498 (9th Cir. 2018) ("[The claimant] fails to identify . . . limitations that the ALJ should have incorporated into the RFC. As a result, [the claimant] has not argued the issue specifically and distinctly as required to invoke the Court's review.") (simplified); *see also Cramer v. Berryhill*, 706 F. App'x 385, 385-86 (9th Cir. 2017) ("Any error in failing to specifically discuss [certain impairments] at step two is harmless because the ALJ considered all the evidence in assessing [the RFC], and [the claimant] fails to identify any medical evidence supporting additional functional limitations that the ALJ did not consider." (citing *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007))).

B.   Analysis

Plaintiff argues that the ALJ erred by not finding that his HIV constituted a severe impairment. (Pl.'s Br. at 14.) Plaintiff acknowledges that the ALJ found that he suffers from a severe physical impairment and thus resolved step two in his favor. (*Id.* at 2.) Thus, Plaintiff must demonstrate harmful error, but has not done so here.

First, as discussed above, Plaintiff has not demonstrated that the ALJ erred in discounting his symptom testimony. Further, Plaintiff fails to identify any specific limitation the ALJ should have included in the RFC to address his alleged fatigue. Without citation, Plaintiff states, "[i]ndividuals who are absent greater than [two] days a month, or beyond the regular breaks . . . would not be able to sustain work and would be terminated." (*Id.* at 12.) But Plaintiff does not point to any evidence in the record—his own symptom testimony, a medical opinion, medical records, or otherwise—that suggests that his alleged fatigue would cause him to miss more than

PAGE 14 – OPINION AND ORDER

two days of work per month.⁶ (*See, e.g.*, Tr. 332, "Patient returns for general HIV follow up today with no concerns regarding his health or HIV status. . . . Patient historically well controlled on present regimen with no adverse reactions reported."; *id.* at 329-30, "The patient reports being in good health in the last 18 months with no significant medical problems . . . . He reports being compliant with his HIV medications and has had no adverse reactions or side effects to therapy noted. . . . HIV- Historically well controlled with good compliance."; *cf. id.* at 44, testifying "if you don't pace yourself perfectly, . . . you'll end up with a fatigue that's hard to break"; *id.* at 330, documenting "[o]ther fatigue" without further explanation.)

Given Plaintiff's failure to detail a more restrictive limitation with supporting evidence that the ALJ should have included in the RFC, the Court finds that Plaintiff has failed to meet his burden of demonstrating that the ALJ committed harmful error.⁷ *See Delgadillo*, 2022 WL 301548, at *3 ("[The claimant] also contends that the ALJ failed to consider the impact of additional functional impairments . . . in determining her RFC. Her brief, however, fails to 'detail what other physical limitations' should have been included in the RFC based on these considerations, which overlap with points the ALJ expressly considered." (citing *Valentine*, 574 F.3d at 692 n.2)); *Joseph-Harvey E. v. Comm'r of Soc. Sec.*, No. 21-cv-5771-TLF, 2022 WL 1448711, at *2 (W.D. Wash. May 9, 2022) ("Plaintiff has not shown how the ALJ's step two consideration of neuropathy and HIV, and decision that these were non-severe impairments,

---

⁶ Plaintiff also fails to point to a medical opinion or other medical evidence in the record to demonstrate that Plaintiff's HIV caused his alleged fatigue. Instead, Plaintiff relies on an Alberta, Canada health information website for the assertion that "feeling tired is common if a person has HIV." (Pl.'s Br. at 4.)

⁷ As Plaintiff points out (Pl.'s Br. at 14 n.11), the ALJ's opinion describes Plaintiff's impairment as "asymptomatic HIV" (Tr. 19) even though the record included a diagnosis of symptomatic HIV during the relevant time period. (*Id.* at 67.) However, Plaintiff has not demonstrated harmful error at step two, and Plaintiff does not challenge the ALJ's step three analysis that his HIV did not meet the severity of one of the listed impairments.

caused any harmful error."); *Valente M. v. Kijakazi,* No. 2:21-cv-00015-MKD, 2022 WL 909356, at *7 (E.D. Wash. Mar. 28, 2022) ("There are no medical opinions in the record that include limitations related to Plaintiff's mental impairments. Plaintiff also did not allege disability due to his mental impairments and did not testify that he had any specific limitations due to his mental impairments. Plaintiff has not met his burden in demonstrating the ALJ harmfully erred at step two. Plaintiff is not entitled to remand on these grounds.") (citation omitted); *cf. Brewitt v. Astrue,* No. 09-cv-5147-RJB/JRC, 2009 WL 3711975, at *6 (W.D. Wash. Nov. 3, 2009) (affirming the ALJ's finding that the claimant's HIV did not cause any severe physical or exertional limitations).

## CONCLUSION

For the reasons stated, the Court AFFIRMS the Commissioner's decision because it is free from harmful legal error and supported by substantial evidence in the record.

**IT IS SO ORDERED.**

DATED this 3rd day of January, 2024.

_/s/ Stacie F. Beckerman_
HON. STACIE F. BECKERMAN
United States Magistrate Judge

PAGE 16 – OPINION AND ORDER